USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 93-1823 SALLY KLESSENS, Plaintiff, Appellant, v. UNITED STATES POSTAL SERVICE, Defendant, Appellee. ____________________ ERRATA SHEET In response to the appellant's petition for rehearing in No. 93-1823, we delete the reference to Mark Persson on p.4, l.13 of the opinion. The sentence as modified should read: "John Russell denied the remarks attributed to him by plaintiff." UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 93-1823 SALLY KLESSENS, Plaintiff, Appellant, v. UNITED STATES POSTAL SERVICE, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. F. T. Dupree, Jr.,* U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Bownes, Senior Circuit Judge. ____________________ ____________________ William J. Royal, Jr. for appellant. _____________________ Thomas E. Kanwit, Assistant United States Attorney, with __________________ whom Donald K. Stern, United States Attorney, was on brief for _______________ appellee. ____________________ ____________________ _________________________ *Of the Eastern District of North Carolina, sitting by designation. BOWNES, Senior Circuit Judge. Plaintiff-appellant BOWNES, Senior Circuit Judge. ____________________ Sally W. Klessens appeals from a judgment by the district court denying her claims of sexual harassment and retaliatory discharge brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-16, et seq. She __ ___ initially attempted to raise a wrongful termination claim. After defendant moved to dismiss for lack of subject matter jurisdiction, the complaint was construed by the district court as stating Title VII claims for sexual harassment and retaliatory discharge. There are two main issues on appeal: (1) Whether the district court applied the wrong legal standard in finding that plaintiff was not subjected to a hostile and abusive workplace environment and therefore erred in denying plaintiff's sexual harassment claim; (2) Whether the district court's finding that plaintiff's discharge was not retaliatory was clearly erroneous. We have reviewed the record for clearly erroneous findings of fact and erroneous rulings of law by the district court. We find it appropriate to discuss each issue separately. The Sexual Harassment Claim The Sexual Harassment Claim ___________________________ Plaintiff's evidence can be summarized as follows. She began work for the Postal Service on January 19, 1988, as -2- 2 a mail handler. Her immediate supervisor was John Russell. A very short time after starting work, a coworker, William Russell, not related to her supervisor, began making sexually explicit remarks to her about her body. Russell persisted in asking for a date despite the fact that his advances were emphatically rebuffed. Russell made explicitly sexual comments to plaintiff, one being, "If I don't get laid I'm going to take hostages." Because of Russell's conduct towards her, plaintiff made it a practice to eat her lunch in her car. At least four times Russell joined her without an invitation by plaintiff. She finally told him he was not wanted and he stopped lunching with her. Other personnel, only one of whom (Mark Spillane) plaintiff could name, also made sexually lewd statements to her. The most frequent remark was "nice piece of ass." Spillane said to plaintiff that she had "small tits," and "go fuck yourself." He also recounted to her at length his own sexual exploits. Shortly after starting work, plaintiff complained to her supervisor, John Russell, about William Russell's conduct. According to plaintiff, John Russell showed no sympathy and made jokes in the presence of her and William Russell about "getting laid." These jokes were accompanied by nudges to William Russell. John Russell also put his arm -3- 3 around plaintiff repeatedly. He claimed to view this in the same way as shaking a person's hand. Plaintiff then reported her harassment to John Russell's supervisor, Mark Persson. According to plaintiff, Persson did not say that he would do anything. Instead, he told her, "OK, Bill [Russell] has done this before, he wrote a letter to another female that worked there, saying that he wanted to slip his tongue so far up her ass . . . ." Most of this evidence came from plaintiff's trial testimony, and from the EEOC hearing transcript which was admitted as evidence at the trial. There was evidence that tended to contradict and undercut plaintiff's evidence. John Russell denied the remarks attributed to them by plaintiff. According to the defendant Postal Service, as soon as it became aware of plaintiff's complaints about William Russell, it took steps to investigate the problem. After the investigation, it offered plaintiff a transfer that would take her away from Russell. Plaintiff declined the transfer when it was offered, but later in the summer of 1988, she agreed to a transfer. The Postal Service also ultimately transferred Russell to another post office. Prior to the transfers, Russell and plaintiff regularly sat together in plaintiff's car during shift breaks when the weather became warm in April or May of 1988. -4- 4 Plaintiff had coffee with Russell at least once after work. On one occasion, she and Russell were together in her car for several hours after work, having a discussion that extended into the early hours of the morning. Defendant stresses that no formal complaints about William Russell were made until after plaintiff was ordered to undergo a fitness for duty examination following her complaint about a workplace back injury. Both sides agree that, until her back injury, plaintiff performed her work in an exemplary fashion. This was attested to in her evaluations by Mark Persson and John Russell. The District Court Opinion The District Court Opinion __________________________ The court purportedly followed the teachings of Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986), in _____________________ ______ deciding plaintiff's sexual harassment claim. It started with the rule that sexual harassment of an employee which creates a hostile working environment violates Title VII. The court ruled that in order to prove a hostile environment claim, a plaintiff must prove four things: (1) membership in a protected class; (2) unwelcome sexual harassment; (3) the harassment was based on sex; "and (4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an -5- 5 intimidating, hostile, or offensive working environment that affected seriously the psychological well-being of the plaintiff." The court found that plaintiff was unable to prove the fourth element. Prefatory to its specific findings, the court ruled that in order for sexual harassment to be actionable under Title VII, the conduct had to be so severe or pervasive as to alter the condition of the plaintiff's employment and create an abusive working environment. It further ruled: Furthermore, a court must find both that a reasonable employee's psychological status and work performance would have been seriously undermined by the defendant's conduct and that the plaintiff was actually offended by the conduct as well as injured in some way by the hostile environment. The court cited to Rabidue v. Osceola Refining Co., 805 F.2d _______ ____________________ 611, 620 (6th Cir. 1986), for this proposition. The court found that plaintiff's proof failed to meet the standard set forth. It found that the evidence presented at trial "did not point to the sort of offensive or abusive environment contemplated by the Supreme Court in Meritor Savings Bank." The court was influenced by the fact _____________________ that "not only was plaintiff able to do her job . . . but was given positive performance evaluations during this period." The court also pointed out that plaintiff let William Russell sit with her in his car on several occasions and at least -6- 6 once she "conversed with him in her car after work." The court found that this conduct, while not evidence that plaintiff welcomed Russell's advances, "cast doubt on her claim that she was subjected to an intolerable work environment by his conduct." The court concluded that "Russell's conduct -- while deplorable -- did not amount to a hostile or offensive work environment within the meaning of Title VII." The court noted that plaintiff testified that she had never been fondled or touched in a sexual manner by Russell or any other co-worker. In a footnote, the court held that the remarks of Mark Spillane were "isolated" and "also fail to show a hostile abusive work environment." The court noted the conflict in testimony between plaintiff and John Russell. It pointed out that Russell acknowledged that off-color language was used occasionally in the workplace, and testified that on one occasion plaintiff stated to John Russell she would "cut [his] balls off and nail them to the wall." The court found that it could not say that plaintiff's testimony was more credible than that of John Russell. The district court's opinion issued on April 23, 1993. As far as we can determine, it was not published. On November 9, 1993, the Supreme Court decided Harris v. ______ Forklift Systems, Inc., 114 S. Ct. 367 (1993). Certiorari _______________________ was granted in Harris, ______ -7- 7 to resolve a conflict among the Circuits on whether conduct, to be actionable as "abusive work environment" harassment (no quid pro quo harassment issue is present _____________ here), must "seriously" affect [an employee's] psychological well-being" or lead the plaintiff to "suffe[r] injury." The Court noted that, in focusing on the employee's psychological well-being, the district court was following Rabidue v. Osceola Refining Co., 805 F.2d 611. Harris, 114 _______ _____________________ ______ S. Ct. at 370. The district court here also relied on Rabidue in formulating its fourth element of proof. See _______ ___ supra at 6. _____ The Court held that the standard which it was reaffirming takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury. As we pointed out in Meritor, "mere _______ utterance of an ... epithet which engenders offensive feelings in a employee," ibid (internal quotation marks ____ omitted) does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment an environment that a reasonable person would find hostile or abusive is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation. Id. at 370.  ___ The Court went on: -8- 8 But Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality. Id. at 370-71. ___ The Court further stated: We therefore believe the District Court erred in relying on whether the conduct "seriously affect[ed] plaintiff's psychological well-being" or led her to "suffe[r] injury." Such an inquiry may needlessly focus the factfinder's attention on concrete psychological harm, an element Title VII does not require. Certainly Title VII bars conduct that would seriously affect a reasonable person's psychological well-being, but the statute is not limited to such conduct. So long as the environment would reasonably be perceived, and is perceived, as hostile or abusive, Meritor, supra, 477 U.S., at 67, 106 _______ _____ S.Ct. at 2405, there is no need for it also to be psychologically injurious. The Court concluded by pointing out that, whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or -9- 9 humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required. Id. at 371. ___ Harris prompted a motion by plaintiff for relief ______ from judgment under Fed. R. Civ. P. 60(b). Plaintiff's motion argued that the district court applied a different standard than that mandated by Harris in determining whether ______ plaintiff was subjected to an abusive work environment arising from sexual harassment. The court, in reply to the motion, stated that it had considered "all of the circumstances," and that its decision was in line with Harris. It held: ______ Correctly read, therefore, the court's memorandum of decision, far from being based solely on the lack of evidence showing plaintiff's severe psychological injury, was in fact based on a consideration of all the circumstances which led the court to conclude that plaintiff had failed to prove her claim of sexual harassment by a preponderance of the evidence as she was required to do. The court continues to adhere to that conclusion. Although hindsight revamping of an opinion is unusual, it is not without precedential support. See Aoude v. Mobil Oil ___ _____ __________ Corp., 862 F.2d 890, 895 (1st Cir. 1988). _____ -10- 10 The court, however, did not rely solely on its reinterpretation of its own opinion in light of Harris to ______ deny plaintiff's motion. It also stated another reason for finding against the defendant on the issue of sexual harassment. Because the court found it unnecessary to do so in its original opinion, it specifically refrained from deciding whether the Postal Service knew or should have known of the alleged sexual harassment and failed to take prompt action to stop it. There can be no doubt that this is one of the elements of plaintiff's proof in a hostile environment sexual harassment claim. See Lipsett v. University of Puerto ___ _______ ____________________ Rico, 864 F.2d 881, 895-98 (1st Cir. 1988).  ____ In its opinion denying plaintiff's motion for relief from judgment, the court found that as soon as the alleged sexual harassment was brought to the attention of defendant's management with authority to take corrective action the offending employee, William Russell, was promptly transferred to another of defendant's facilities. The sexual harassment issue is close, but the last finding of the district court, which has a solid evidentiary foundation, is insurmountable. It was not clearly erroneous. We, therefore, affirm the district court on the sexual harassment claim. The Retaliatory Discharge Claim The Retaliatory Discharge Claim _______________________________ -11- 11 Plaintiff claims she was discharged because of her complaints of sexual harassment. Unlike the sexual harassment claim, this is not a close issue. Plaintiff gave false answers to certain questions asked on the forms she filled out in applying for work with the Postal Service. There was evidence from which it could reasonably be found that plaintiff's sexual harassment claim was not implicated in the Postal Service's decision to discharge plaintiff. Plaintiff was required to fill out a pre-employment certificate of medical examination form (PS Form 2485) in order to work for the Postal Service. Question number 4 asked, "Have you Ever Been Treated for Any Medical Condition Other Than Minor Illness, or had Any Operations?" Plaintiff answered "Yes" to this question and wrote in: "Tosilectomy [sic] 1960." Question 20 on PS Form 2485 asked, "Do you Now or Have you Ever Had Any of the Following Conditions," including Condition number 43, "Back Injury or Abnormality." Plaintiff put a cross in the "No" column, as she did for all of the other listed conditions. Plaintiff also had to answer questions on a form entitled, "TEST OF STRENGTH AND STAMINA" (PS Form 2481). Four questions were asked on this form: 1. DO YOU HAVE HEART TROUBLE? 2. DO YOU HAVE A HERNIA OR RUPTURE? 3. HAVE YOU HAD ANY TROUBLE WITH YOUR BACK? -12- 12 4. IS THERE ANY OTHER REASON THAT YOU SHOULD NOT REPEATEDLY LIFT 70 POUNDS? Plaintiff answered "No" to all four questions. The evidence disclosed that plaintiff was in three automobile accidents prior to going to work with the Postal Service, and that each of the accidents caused injury to plaintiff's back and neck. There was further evidence that plaintiff suffered back pain in April and October of 1987, and that she had thirteen weeks of physical therapy treatment for her back during the two years before her employment by the Postal Service. There also was evidence establishing that plaintiff was fully aware of her back problems at the time she filled out the two Postal Service forms. Plaintiff began working as a mail handler on January 19, 1988. This required the regular and repeated lifting of seventy pound mail bags. On July 31, 1988, plaintiff requested that she be put on light duty work because her back was bothering her. Several days later plaintiff's supervisor learned that she claimed that her back injury was caused by her work as a mail handler. He ordered her to fill out an Injury on Duty (IOD) form immediately. This form should have been completed and filed when plaintiff first claimed she was injured at work. After the Postal Service received the completed IOD form, it told plaintiff to obtain clearance from her doctor that she could return to work. Plaintiff submitted letters from her health care -13- 13 insurer, Harvard Community Health Plan, which disclosed a pre-existing recurring back problem. Plaintiff was subsequently ordered to submit to a fitness-for-duty examination. An examination was given plaintiff by Dr. James Ryan on August 17, 1988. He concluded that she had a pre-existing back problem which she had failed to disclose on her Postal Service employment application forms. Plaintiff was notified in September 1988 that she would be terminated, effective October 1, 1988, for giving false answers to questions on her employment application forms. The termination action was initiated by her supervisor in her new work location, Jeremiah Farren. Farren testified that he was unaware of any sexual harassment complaints by plaintiff when he decided to recommend her termination. There also was evidence showing that the Postal Service neither knew nor had any reason to know of plaintiff's claims of sexual harassment by a Postal Service employee other than William Russell prior to the time that plaintiff was ordered to take a fitness-for-duty physical examination. There was evidence establishing that other postal employees had been discharged for giving false answers to questions asked on Postal Service employment application forms. -14- 14 The district court applied the correct legal test in its analysis of the retaliatory discharge claim. It found that plaintiff had made out a prima facie case for retaliatory discharge. After considering the facts in detail, the court ultimately found that plaintiff had failed to meet her burden of showing that the Postal Service's stated reasons for her discharge were pretextual. We have considered carefully the evidence and arguments of plaintiff, and do not find them sufficient to overcome the clearly erroneous barrier. Plaintiff relies heavily on the affidavit of Michaela Norton. Norton was employed by the Postal Service as a physician's assistant during the time plaintiff worked as a mail handler. Norton interviewed plaintiff in connection with plaintiff's pre- employment medical examination and assessment. Paragraphs four and five of the Norton affidavit state: 4. I am certain that if Ms. Klessens had indicated to me that she had ever experienced any recurrent back pain, any particular back injury or that she underwent physical therapy for her back, I would have made a notation of this on the PS Form 2485. 5. Unless Ms. Klessens volunteered such information, I would have had no way of knowing of [sic] that she had a back condition or that she had back trouble previously. The only information she provided on the Form 2485 was that her back had been x-rayed after a motor vehicle accident. She told me, according to my notes, that the x-rays showed she had no problems. I therefore had no -15- 15 reason to suspect any back injury or condition. These statements reinforce defendant's assertion that plaintiff knowingly withheld information during the application process. Contrary to plaintiff's assertion, there was evidence from which it could be reasonably found that the Postal Service was not aware of plaintiff's back injury history until Dr. Ryan's report. Plaintiff's basic contention is that the district court clearly erred in finding that she failed to prove the Postal Service's stated reason for discharging her was pretextual. Our review of the record convinces us that this finding was not clearly erroneous. Indeed, we think it clearly correct. Affirmed. Affirmed. _________ -16- 16